IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA,

     v.                                Criminal No. 4:18cr95 (DJN)

TREZITH RASHAD SMART,
     Defendant.

## **MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motions to Dismiss the Indictment

(ECF Nos. 143, 156), moving the Court to dismiss the Superseding Indictment (ECF No. 41) for

a violation of his right to a Speedy Trial. For the reasons stated below, Defendant's Motions

(ECF Nos. 143, 156) are hereby DENIED.

## I.     BACKGROUND

On December 10, 2018, the Government filed an Indictment (ECF No. 1), charging

Defendant with one count of Conspiracy to Distribute Cocaine. On September 16, 2019,

Defendant was taken into custody and, on September 27, 2019, Defendant had his initial

appearance before the Court. (ECF Nos. 22, 24.) The Court appointed Rodolfo Cejas of the

Federal Public Defender's Office to represent Defendant. (ECF No. 24.) The Court set a trial

date for December 10, 2019. On October 21, 2021, Defendant filed a motion to withdraw Mr.

Cejas due to a conflict. (ECF No. 30.) On October 23, 2019, the Court granted Defendant's

Motion to Withdraw, appointed Fernando Groene to represent Defendant and found that the ends

of justice required striking the December 10, 2019 trial date. (ECF No. 31.) The Court set a new

trial date for January 22, 2020.

On November 11, 2019, Defendant filed a Motion to Withdraw Mr. Groene as counsel (ECF No. 32), citing a breakdown in the attorney-client relationship.  On November 25, 2019, the Court held a hearing on the Motion to Withdraw, granted the Motion to Withdraw, appointed Gregory Matthews to represent Defendant and kept the January 22, 2020 trial date.  (ECF Nos. 37-38.)

On January 14, 2020, the Government dismissed the Indictment and filed a Superseding Indictment (ECF No. 41), charging Defendant with four counts:  Count One, Conspiracy to Distribute and Possess with Intent to Distribute Cocaine; Counts Two and Three, Possession with Intent to Distribute and Distribution of Cocaine; and, Count Four, Possession of a Firearm During Drug Trafficking.  Specifically, the Government alleges in Count One that Defendant conspired to distribute five or more kilograms of cocaine between 2013 and November 2018. Counts Two and Three charge Defendant with distributing an unspecified amount of cocaine on May 23, 2018, and August 13, 2018, respectively.  Finally, Count Four charges Defendant with possessing a firearm on November 1, 2018, in furtherance of his possession with the intent to distribute cocaine.

On January 23, 2020, Defendant filed a motion to substitute counsel, as he had retained James Broccoletti to represent him.  (ECF No. 46.)  That day, the Court granted the Motion to Substitute Counsel.  (ECF No. 49.)  On January 29, 2020, Defendant moved for a continuance of the trial to pursue a potential resolution and "to continue investigation into the case in order to properly prepare for trial."  (ECF No. 50.)  The Court granted Defendant's motion for a continuance and subsequently set the trial for April 14, 2020.  (ECF No. 51.)

On March 13, 2020, the Court entered General Order No. 2020-02, suspending all civil and criminal jury trials from March 16 through April 17, 2020, due to COVID-19.  Then, on

March 24, 2020, the Court entered General Order No. 2020-07, suspending all in-person proceedings, including trials, until May 1, 2020. The Court excluded the suspended time from the Speedy Trial calculations, finding it "necessary to balance the health and safety of jurors and prospective jurors, court employees, litigants (to include criminal defendants), counsel, judges, and the public, with the Constitutional responsibility to continue federal court operations during the COVID-19 outbreak." *Id.* at 8. Ultimately, due to COVID-19, the Court suspended criminal jury trials until September 14, 2020 (Gen. Order. No. 2020-19) and then again from November 16, 2020 until February 28, 2021. (Gen. Order Nos. 2020-22, 2021-01.) Consequently, due to the COVID-19 pandemic, the Court could not conduct any trials for over nine months in total.

On April 7, 2020, Defendant filed a Motion to Determine Competency Pursuant to 18 U.S.C. § 4241(a), asking the Court to hold a hearing to determine the competency of Defendant and to order a psychiatric evaluation of Defendant. (ECF No. 55.) The Court granted Defendant's Motion and ordered that Defendant undergo a psychiatric examination. (ECF No. 57.) The Court specifically excluded that time from the Speedy Trial Act calculations. *Id.* On June 5, 2020, this action was reassigned from United States District Judge Arenda Wright Allen to the undersigned. (ECF No. 58.) The Court scheduled a competency hearing to occur on August 6, 2020.

Due to complications with COVID-19, FDC-Miami requested an extension to complete the mental evaluation until August 21, 2020. (ECF No. 59.) On September 21, 2021, the Court received the mental health evaluation from Dr. Carmen J. Rodriguez, Psy.D., recommending that the Court find Defendant not competent to stand trial. (ECF No. 62.) After rescheduling the hearing again due to COVID complications, the Court held the competency hearing on October 23, 2020. (ECF No. 69.) The Court found Defendant incompetent to stand trial and ordered that

he submit to competency restoration. (ECF No. 68.) The Court explicitly excluded the time of competency restoration from the Speedy Trial Act calculations. *Id.* at 2.

On July 6, 2021, the Mental Health Department at FMC-Butner submitted a forensic evaluation, opining that Defendant could understand the nature and consequences of the proceedings against him and assist properly in his own defense. (ECF No. 89.) Importantly, in the forensic evaluation, Dr. Tracy O'Connor Pennuto, J.D., Ph.D., observed that Defendant disagreed with the findings and attempted to manufacture a finding that he lacked competency in an effort to avoid going to trial. (ECF No. 89 at 9-11.) He asked to retake the test and changed his affect. (ECF No. 89 at 10.) Ultimately, Dr. Pennuto "confirmed suspicions about Mr. Smart feigning psychiatric symptoms in an effort to influence the study outcome." (ECF No. 89 at 10.)

During telephone calls with family and friends, Defendant expressed disappointment that he would be found competent. (ECF No. 89 at 12-14.) He told his father "I just talked to the doctor. She found me competent . . . That's not good, Dad. That's not good . . . I'm looking at 30 years in prison, Dad! 30 years." (ECF No. 89 at 13.) His conversations with other family members and friends expressed similar disappointment at the competency finding and the possibility of facing trial. (ECF No. 89 at 13.) Conversely, when Dr. Pennuto told Defendant that he may lack competency after all, he expressed great joy to his family and friends. (ECF No. 89 at 14.)

Similarly, in an addendum submitted to the Court on July 20, 2021, Dr. Pennuto described how Defendant had begun expressing suicidal thoughts as he neared the time when he would have to go to trial. (ECF No. 100 at 2.) However, Dr. Pennuto opined that "Mr. Smart's verbalized thoughts of suicide appear to be related to his stated goal of not going forward with legal proceedings." (ECF No. 100 at 2.)

4

The Court scheduled a status hearing for July 21, 2021, to determine Defendant's competency to stand trial.  On July 15, 2021, Defendant filed a Motion to Withdraw Mr. Broccoletti as his counsel, again citing a breakdown in the attorney-client relationship.  (ECF No. 99.)  On July 23, 2021, the Court entered an Order finding Defendant competent to stand trial.  (ECF No. 102.)  The Court also granted the Motion to Withdraw and appointed Emily Munn to represent Defendant.  (ECF No. 103.)   Finally, the Court scheduled trial to begin on October 25, 2021.  (ECF No. 105.)

On August 23, 2021, Defendant filed a Motion to Suppress (ECF No. 108), asking the Court to exclude certain evidence against him arising out of a traffic stop.  On September 13, 2021, Defendant sent a letter to the Court asking to have Ms. Munn withdrawn from the case and to file a motion to suppress based on a separate traffic stop.  (ECF Nos. 112, 115-16.)  Further, on September 15, 2021, Defendant filed a motion to dismiss based on spoliation of evidence. (ECF No. 118.)  The Court scheduled a hearing for Defendant's motions for October 1, 2021. (ECF No. 119.)  Thereafter, both Defendant and the Government requested a continuation of the hearing on the Motions to Suppress.  (ECF Nos. 123, 127.)  The Court continued the hearing as to Defendant's Motions to Suppress, but held the hearing on Defendant's Motion to Dismiss and Motion to Withdraw.  (ECF No. 129.)  Additionally, the Court continued the hearing on the Motions to Suppress until October 25, 2021, and scheduled trial to begin on November 2, 2021. (ECF No. 129.)

On October 1, 2021, the Court denied Defendant's Motion to Dismiss and granted his Motion to Withdraw.  (ECF Nos. 135-36.)  The Court further granted Defendant's request to represent himself and appointed Ms. Munn as standby counsel.  (ECF No. 135.)

On October 12, 2021, Defendant filed the instant Motion to Dismiss (ECF No. 143), arguing that the delay in conducting his trial violates his Sixth Amendment right to a Speedy Trial. On October 18, 2021, Defendant filed a separate Motion to Dismiss (ECF No. 156), arguing that the delay violates the Speedy Trial Act. In support, Defendant claims that the Government knew he had the mental competency to stand trial, but it nevertheless delayed the trial. (ECF No. 156.) On October 20, 2021, the Government opposed Defendant's Motions, largely on the grounds that the delays occurred as a result of Defendant's actions and COVID-19. (Government's Resp. to Mot. to Dismiss for Lack of Speedy Trial ("Govt.'s Resp.") (ECF No. 160)). On October 25, 2021, the Court heard argument on the Motions, and the matter is now ripe for review.

## II.      ANALYSIS

Defendant raises a Speedy Trial claim under both the Sixth Amendment of the Constitution and the Speedy Trial Act, 18 U.S.C. § 3161. The Court will address each in turn.

### A.      Defendant's Constitutional Challenge Fails.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court set forth a four-factor balancing test to consider Sixth Amendment challenges in *Barker v. Wingo*, 407 U.S. 514 (1972). Courts balance: "(1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice from the delay." *United States v. Burgess*, 684 F.3d 445, 451 (4th Cir. 2012). The Court will examine each in turn. The first factor, the length of delay, "is a threshold requirement because the defendant must establish that the length of the delay is at least

6

presumptively prejudicial." *Id.* A defendant claiming a Sixth Amendment violation must establish "that on balance, [the] four separate factors weigh in his favor." *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995). The Court finds that Defendant has not met this burden.

### i.     The Length of Delay.

The first factor involves two aspects. *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009). First, the Court determines whether the length of delay triggers a Speedy Trial inquiry, which the Supreme Court has suggested occurs when such a delay approaches one year. *Id.* Second, the reviewing court must weigh "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

Here, the delay stretches for roughly two years; however, for approximately nine months of that delay, the Court could not conduct trials due to the COVID-19 pandemic. (Gen. Order Nos. 2020-02, 07, 19, 22, 2021-01.) The Government claims that the various causes of the delay should preclude them from counting towards the time. (Govt.'s Resp. at 8.) However, this argument finds better footing in the second factor. *See Hall*, 551 F.3d at 272 ("The second *Barker* factor, the reasons for the trial delay, is necessarily related to a proper assessment of the period of delay."). For the sake of the analysis, the Court assumes that the delay in this case triggers a Speedy Trial inquiry, which leads the Court to assess the other factors.

### ii.     The Reasons for Delay.

Courts characterize the reasons for delay as either valid, improper or neutral. *Hall*, 551 F.3d at 272. The Court focuses on the intent of the prosecution, as "delay to hamper the defense

weighs heavily against the prosecution, while delay caused by the defense weighs against the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

Here, the Court finds that three main reasons caused the delay, and none of the reasons weigh in favor of Defendant, as they constitute either valid or neutral reasons for delay. First, Defendant has had five different attorneys representing him throughout this litigation. Although Defendant bears no fault for the conflict that caused Mr. Cejas to withdraw, the other four attorney-client relationships ended at the behest of Defendant. Defendant has shown an utter lack of regard — hostility, even — for the attorney-client relationships, which has resulted in numerous delays of his trial. Each substitution of counsel caused a delay in the proceedings as new counsel needed time to prepare a defense. Indeed, Defendant moved for a continuance at one point to allow his new attorney to properly prepare for the case. (ECF No. 50.) This reason weighs strongly against Defendant.

Second, the issues surrounding Defendant's mental competency to stand trial caused the largest delay. Importantly, Defendant moved for an order requiring a competency evaluation. (ECF No. 55.) Defendant now claims that his then-attorney should not have moved for such an evaluation. However, "[b]ecause the attorney is defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant." *Brillon*, 556 U.S. at 90-91. Moreover, the Court has an obligation to ensure that defendants have the competency to stand trial. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966) (holding that the court's failure to make a competency inquiry deprived the defendant of his constitutional right to a fair trial). And, following an evaluation, the Court made its determinations regarding Defendant's competency. Defendant cannot now collaterally challenge those determinations to claim his trial should not have been delayed.

8

Moreover, in assessing who bears the blame for the delays, the Court relies heavily on Dr. Pennuto's opinion that Defendant used competency issues as a tactic to intentionally delay going to trial. (ECF No. 89 at 10-14; ECF No. 100 at 2.)  Indeed, he expressed disappointment when he believed that he would be found competent and exuberance when he believed that he would be found not competent. (ECF No. 89 at 12-14.)  Because Defendant moved for the competency examination and appeared to use the examination and competency restoration process as a means of delaying trial, this particular reason for the delay also weighs heavily against Defendant.

Third, some of the delay in this trial can be attributed to the COVID-19 pandemic.  The Court could not conduct any trials for over nine months.  However, much of the time that the Court could not conduct jury trials due to COVID-19 overlaps with the time that Defendant could not stand trial due to his incompetency.  Clearly, neither Defendant nor the Government bears blame for delays resulting from COVID-19.  As such, this neutral reason weighs neither for nor against Defendant.  In sum, with the exception of the delays caused by COVID-19 (which operate largely in the background here), Defendant shoulders the responsibility for intentionally causing the delay that he now claims violates his rights.  Thus, on balance, the reasons for the delay weigh strongly against Defendant.

### iii.    The Assertion of the Right.

For the third factor, the Court considers whether and how Defendant asserted his right to a Speedy Trial. "Failing to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Barker*, 407 U.S. at 532.  Moreover, the Fourth Circuit has held that this factor weighs against a defendant who asserts his right too late. *United States v. Grimmond*, 137 F.3d 823, 829 (4th Cir. 1998) (holding that no violation of a defendant's Speedy Trial right

9

occurred after a thirty-five month delay, due in part to the fact that the defendant waited until four months before trial to assert the right).

Here, Defendant did not assert his right to a Speedy Trial until shortly before trial. Indeed, he moved for two continuances (ECF Nos. 50, 115, 117, 123) and acquiesced in other continuations of his trial.  Although he claims to have asserted his right all along, his actions of moving for a continuance and a mental competency evaluation — and attempting to manipulate the evaluation process to result in a finding of incompetence — belie these assertions.  For example, on September 14, 2021, Defendant sent a letter to the Court stating that he faced trial in 45 days, but he was "nowhere close to being prepared." (ECF No. 117).  He went on to state, "I am still requesting a speedy trial, but I don't see how I'm going to be ready in time." (ECF No. 117.)  Tellingly, almost immediately after Defendant argued during the Final Pretrial Conference that his right to a Speedy Trial had been violated, he declared, "I need a continuance."  The Court does not consider these requests for a Speedy Trial, coupled with requests for a delay, as serious assertions of his right to a Speedy Trial.  Accordingly, this factor weighs against Defendant.

### iv.  Prejudice.

Most importantly, the Court must determine whether Defendant has suffered any prejudice as a result of the delay.  The Supreme Court has identified three defense interests for courts to consider:  "(1) whether there was an oppressive incarceration; (2) the anxiety and concern suffered by the accused, and (3) the possibility that the defense was impaired." *Hall*, 551 F.3d at 272 (citing *Barker*, 407 U.S. at 532).  Defendant cannot meet his burden on any of these three.

In his Motion, Defendant makes no claims that he suffered prejudice as a result of oppressive incarceration or that he suffered anxiety and concern. Instead, he seems to base his claim to prejudice on the impaired-defense prong. He claims that he had a statement in a report from DEA Agent Smith about the traffic stop. However, he has not shown how this statement would exculpate him. Nor has he demonstrated how the delay has hampered his ability to present this statement at trial or that Agent Smith will not testify at trial due to the delay. *See Grimmond*, 137 F.3d at 830 (concluding that no impairment of defense occurred where the defendant had failed to "identif[y] any witness that was unavailable as a result of the delay," did not "allege[] that any witness was unable accurately to recall the events in question," and did "not contend that any exculpatory evidence was lost" or that "any evidence . . . was unavailable because of the delay"). Indeed, during the Final Pretrial Conference, Defendant admitted that this purported missing statement no longer presented an issue in light of Agent Smith's testimony during the Final Pretrial Conference. Additionally, he could not identify any further prejudice that the delay itself created. Accordingly, the prejudice factor weighs heavily against Defendant.

On balance, the four *Barker* factors weigh against Defendant. Therefore, he has not met his burden, and his Sixth Amendment claim fails.

### B.      Defendant's Speedy Trial Act Challenge Fails.

Defendant also claims a violation of the Speedy Trial Act. (ECF No. 156.) The Speedy Trial Act codifies the Sixth Amendment's right to a Speedy Trial and provides that:

> the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

11

The Speedy Trial Act provides for several different exclusions from the 70-day time period relevant to this case.  First, courts may exclude from the Speedy Trial computation "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweighed the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  Second, courts exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).  The final exception relevant here excludes "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant."  18 U.S.C. § 3161(h)(1)(A).

If 70 non-excludable days have passed before a defendant's trial has begun, "the information or indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).  The defendant bears the burden of proof, except as to delays caused by the unavailability of the defendant or an essential witness.  *Id.*

With this framework in mind, the Court will examine the periods of time in this case that the Court will exclude from the Speedy Trial Act computation.  Many of these exclusions overlap.  However, the Court will examine each event and the time that it excludes before computing the number of days that have elapsed that count against the time limitation in the Speedy Trial Act.

### i.      *Ends-of-Justice Exclusions.*

The Court has granted several continuances in this case that resulted from Defendant's new counsel requiring additional time to prepare.  In each instance, the ends of justice served by

the continuance outweighed the best interests of the public and Defendant in a Speedy Trial. Additionally, the Court continued all jury trials due to COVID-19. The Court will discuss the time that each continuance excluded from the Speedy Trial calculation.

In granting an exception under the "ends of justice" provision, a court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The Act lists several factors, "among others" to consider, including "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i). The Court also considers whether proceeding without a continuance "would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). Additionally, a court can consider "whether the case is complex or unusual, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(iii). The Act prohibits a court from considering two factors: "general congestion of the court's calendar" and the Government's "lack of diligent preparation or failure to obtain available witnesses." 18 U.S.C. § 3161(h)(7)(C).

To the extent that the Court does not fully set forth in the record the ends-of-justice findings when granting a continuance, it may do so when ruling on the Speedy Trial motion.

*United States v. Pair*, 515 F. Supp. 3d 400, 406 (E.D. Va. 2021.)  The Act requires that the Court

make the findings before or at the time of granting a continuance.  *Id.*; *Zedner v. United States*,

547 U.S. 489, 506 (2006) ("[T]he Act is clear that the finding must be made, if only in the

judge's mind, before granting the continuance."); *United States v. Henry*, 538 F.3d 300, 304 (4th

Cir. 2008) ("[I]t must be clear from the record that the court conducted the mandatory balancing

contemporaneously with the granting of the continuance.").  However, a court can enter those

findings into the record as late as when ruling on the defendant's motion to dismiss. *Pair*, 515 F.

Supp. 3d at 406; *see Zedner*, 547 U.S. at 507 ("[T]he Act implies that those findings must be put

on the record by the time a district court rules on a defendant's motion to dismiss under

§ 3162(a)(2)."); *Henry*, 538 F.3d at 304 ("The court is only required to state its findings on the

record by the time it rules on the defendant's motion to dismiss . . . .").  Here, the Court made the

requisite factual findings at the time of granting the continuances.  With its statements from the

bench during the hearing on the instant Motion and its explanation in this Memorandum Opinion

explaining its reasoning for denying the Motion, the Court has entered its findings into the

record.

  The Court originally set the trial for this case to begin on December 10, 2019.  However,

on October 21, 2019, Defendant's counsel, Rodolfo Cejas, filed a Motion to Withdraw based on

a conflict of interest. (ECF No. 30.)  On October 23, 2019, the Court granted the motion and

stated that the "ends of justice also require that the trial date of December 10, 2019 be stricken."

(ECF No. 31.)  The next day, the Court appointed Fernando Groene to represent Defendant.  The

Court then set the trial date for January 22, 2020.

  Given the complexity of the case and the amount of discovery involved, counsel could

not have properly prepared for a trial by December 10, 2019.  Indeed, Defendant has repeatedly

alluded to the voluminous discovery in this case. Forcing counsel to prepare to try this case by December 10, 2019 — six weeks later — would have prejudiced the defense, thus raising the possibility of a miscarriage of justice. Accordingly, as the Court alluded to at the time, the ends of justice served by striking the December 10, 2019 trial date outweighed the best interest of the public and Defendant in a Speedy Trial. Therefore, the Court will exclude the time from October 23, 2019, to January 22, 2020, from the Speedy Trial Act calculation.

On January 17, 2020, the Court arraigned Defendant on the Superseding Indictment and set a jury trial to begin on February 19, 2020. (ECF No. 44.) Then, on January 29, 2020, following yet another substitution of counsel request by Defendant, Defendant moved for a continuance. (ECF No. 50.) Defendant claimed that "[c]ounsel for Mr. Smart needs additional time to pursue a resolution of this case, and to continue investigation into the case in order to properly prepare for trial." (ECF No. 50.) That day, the Court granted Defendant's request for a continuance, finding "that the ends of justice served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial under 18 U.S.C. sec. 3161(h)(7)(A)(iv)." (ECF No. 51.) The Court rescheduled the trial for April 14, 2020.

Like the first continuance stemming from a substitution of counsel, the Court found that denying Defendant's request for a continuation to properly prepare for trial would have prejudiced the defense and possibly resulted in a miscarriage of justice. Indeed, forcing Defendant's attorney to prepare for trial in less than one month would have resulted in him having less time to prepare than the minimum amount of time allowed by the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(2) ("Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se."). Accordingly, as the

15

Court found at the time, the ends of justice served by continuing the February 19, 2020 trial date outweighed the interests of the public and Defendant in a Speedy Trial. Therefore, the Court will exclude the time from January 29, 2020, to April 14, 2020, from the Speedy Trial Act calculation.

During the life of this case, Chief Judge Mark S. Davis of the Eastern District of Virginia entered Orders wherein the Court suspended all jury trials in the District for various periods of time due to the COVID-19 pandemic. Specifically, the Court suspended jury trials from March 13, 2020, through September 14, 2020, and from November 16, 2020, through February 28, 2021. Each time, the Court entered a General Order that contained detailed factual findings about the effects of the COVID-19 pandemic on the Court's ability to conduct fair and safe jury trials. Gen. Order 2020-02 at 1-4; Gen. Order 2020-06 at 1-6; Gen. Order 2020-07 at 1-8; Gen. Order 2020-12; Gen. Order 2020-16 at 6-12, 14-15; Gen. Order 2020-19 at 1-7, 13-23; Gen. Order No. 2020-22 at 2-4; Gen. Order 2021-01 at 3-6, 8-14. As a result of these findings, the Court determined in each that "the ends of justice served by ordering the continuances outweigh the best interests of the public and each defendant in a speedy trial."

Defendant does not contend that these factual findings should not apply to his individual case. However, even if he did, his challenge would fail, as these findings applied with equal force to his case. The Court considered whether it could hold a trial in compliance with the health and safety restrictions and recommendations of public health officials, as well as whether such a trial would be fair to Defendant. The nature of the pandemic implicated Defendant's right to a fair trial. Specifically, the Court could not guarantee Defendant a focused jury, an adequate opportunity for Defendant's counsel to work safely with Defendant to prepare a defense or a jury that represented a cross-section of the community. Because of the obstacles to conducting a fair

trial in the midst of the COVID-19 pandemic, only a continuance of Defendant's case could have avoided a miscarriage of justice. Indeed, other courts around the country found that postponing trials during the COVID-19 pandemic served the ends of justice and outweighed the best interests of the public and defendants in a Speedy Trial. *Pair*, 515 F. Supp. 3d at 408-09 (collecting cases from districts around the country). Therefore, the Court will exclude the time from March 13, 2020, to September 14, 2020, and November 16, 2020, to February 28, 2021, from the Speedy Trial Act calculation, because the ends of justice served by a continuance in the face of the COVID-19 pandemic outweighed the best interest of the public and Defendant in a Speedy Trial.

Finally, after Defendant moved to withdraw Mr. Broccoletti as counsel, and the Court appointed Ms. Munn, the Court continued the case to allow Ms. Munn to properly prepare a defense, setting a trial date of October 26, 2021. (ECF No. 101.) During the hearing wherein the Court appointed Ms. Munn, the Court addressed at length the factual findings that necessitated a continuance. First, Defendant expressed a desire to file pretrial motions, including suppression motions and a *Jencks* motion through his new counsel, which would require additional time. (July 21 Tr. 11:2-12.) Defendant's new counsel required additional time to review the case, meet with Defendant and file the pretrial motions. (July 21 Tr. 11:14-22.) The Court noted that the motions deadline had passed, but that it would give Defendant additional time to file new motions due to having new counsel. (July 21 Tr. 13:6-15.) Defendant agreed that he wanted his new attorney to have ample time to file motions and prepare for trial. (July 21 Tr. 13:17-14:7.) In fact, the Court granted Defendant extra time to file pretrial motions, as Ms. Munn was prepared to request, "because of some of the issues in this case." (July 21 Tr. 16:7-16.) Finally, the Court specifically found that the interests of justice outweighed the needs of the public and

Defendant in a Speedy Trial. (July 21 Tr. 19:5-8.) The Court based this finding out of concern about Defendant "getting his opportunity to file the motions that he wants and get[ting] to be fully heard and [counsel] being fully prepared to do that." (July 21 Tr. 19:9-12.) Because the Court found that the ends of justice outweighed the best interests of the public and Defendant in a Speedy Trial, the Court will exclude the time from July 21, 2021 to October 26, 2021 from the Speedy Trial Act calculations.

### ii.    Pre-Trial Motions Exclusions.

The pretrial motions exception excludes from the Speedy Trial calculations "the time period between [a pretrial motion's] filing and its resolution." *United States v. Riley*, 991 F.2d 120, 124 (4th Cir. 1993). "[T]he filing of a pretrial motion falls within this provision irrespective of whether it actually causes, or is expected to cause, delay in starting trial." *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011). Due to the rigidity of this exception, the Court can conduct a more straightforward review of the time excluded by pretrial motions.

On October 21, 2019, Defendant filed a Motion to Withdraw Attorney, moving to withdraw Rodolfo Cejas as his attorney. (ECF No. 30). On October 23, 2019, the Court granted that motion. Accordingly, the Court will exclude the time from October 21, 2019, to October 23, 2019, from the Speedy Trial Act calculation.

On November 11, 2019, Defendant filed another Motion to Withdraw, this time seeking to replace his court-appointed counsel, Fernando Groene. (ECF No. 32.) On November 25, 2019, the Court granted that motion. (ECF No. 38.). Accordingly, the Court will exclude the time from November 11, 2019, to November 25, 2019, from the Speedy Trial Act calculations.

Defendant filed a Motion to Substitute Attorney (ECF No. 46) on January 23, 2020, and a Motion to Continue (ECF No. 50) on January 29, 2020. However, the Court disposed of both

motions on the day that Defendant filed them and, therefore, the Court will not exclude any time from the Speedy Trial Act calculations based on these motions.

On April 27, 2020, Defendant filed a Motion to Determine Competency Pursuant to 18 U.S.C. § 4241(a). (ECF No. 55.) On May 8, 2020, the Court granted Defendant's Motion. (ECF No. 57.) Accordingly, due to Defendant's Motion, the Court will exclude the time from April 27, 2020 to May 8, 2020.

On October 15, 2020, the Government filed a Motion for Order to Restore Competency. (ECF No. 66.) On October 23, 2020, the Court granted the Government's Motion, found Defendant not competent to stand trial and ordered Defendant to continue to undergo a competency evaluation to determine if he could regain competence. (ECF No. 68.)[1] Thus, the Court will exclude the time between October 15, 2020, and October 23, 2020, in calculating the time under the Speedy Trial Act.

On July 19, 2021, Defendant filed yet another Motion to Withdraw, this time seeking to withdraw Mr. Broccoletti as counsel and again citing a breakdown in the attorney-client relationship. (ECF No. 100.) On July 21, 2021, the Court granted the Motion to Withdraw. (ECF No. 103.) Accordingly, the Court will exclude the time between July 19, 2021, and July 21, 2021, from the Speedy Trial Act calculation.

Following Defendant's restoration of competency and appointment of Ms. Munn as new counsel, Defendant filed a Motion to Suppress on August 23, 2021. (ECF No. 108.) On October 25, 2021, the Court heard evidence and argument on the Motion to Suppress and denied the

---

[1]     On October 1, 2020, Defendant filed a pro se Motion to Suppress and Motion to Dismiss (ECF No. 64). The Court denied these motions, because Defendant had counsel and lacked capacity to stand trial. (ECF No. 67.) Because this time is tolled by other exclusions, the Court need not address whether these improperly filed motions tolled the time for the Speedy Trial calculation.

Motion to Suppress. Accordingly, the Court will exclude the time from August 23, 2021 to October 25, 2021, from the Speedy Trial Act calculation.

On September 14, 2021, Defendant sent a letter to the Court indicating that he desired to proceed pro se. (ECF No. 115.) The Court construed this as a motion to proceed pro se and held a hearing on the motion on October 1, 2021. (ECF No. 134.) The Court granted Defendant's Motion and allowed him to proceed pro se. (ECF No. 135.) Consequently, the Court will exclude the time between September 14, 2021, and October 1, 2021, from the Speedy Trial calculation.

Beginning on September 14, 2021, and continuing through October 22, 2021, Defendant filed a plethora of pro se motions, including a motion to suppress, motions for discovery and numerous motions to dismiss on various grounds. (ECF Nos. 116, 118, 123, 140, 142, 143, 145, 155, 156, 157, 162, 167.) Each of these motions would provide an independent basis to toll the Speedy Trial clock until October 25, 2021, when the Court resolved the motions. However, the time period tolled by Defendant's Motion to Suppress (in addition to the time period tolled by the continuance granted when the Court appointed Ms. Munn) envelopes all of these motions, so the Court need not go into detail about the dates of each.

### iii.    Competency Delays.

Defendant focuses his challenge on the time period following his request for a competency exam. (ECF No. 156.) The Act expressly excludes the time from the Speedy Trial Act calculation that Defendant asks the Court to count, because it related to his competency. The Speedy Trial Act excludes from the 70-day period any "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A).

Here, on April 27, 2020, Defendant moved for a psychiatric exam to determine his competency to stand trial.  (ECF No. 55).  The Court granted the Motion and ordered Defendant committed to the Attorney General for the purposes of a psychiatric or psychological examination to determine whether Defendant had the capacity to stand trial.  (ECF No. 57.)  Following several COVID-19-related delays, on September 21, 2020, the Bureau of Prisons submitted its opinion that Defendant lacked competency.  (ECF No. 62.)  Following a hearing on October 23, 2020, the Court found Defendant not competent to stand trial.  (ECF No. 68.)  Accordingly, the Court will exclude the time between April 27, 2020, and October 23, 2020, from the Speedy Trial Act calculation as a delay resulting from a proceeding to determine the mental competency of Defendant.

Further, the statute excludes "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial."  18 U.S.C. § 3161(h)(4).  The Court found Defendant not competent to stand trial on October 23, 2020, and it ordered Defendant committed to the custody of the Attorney General for psychiatric or psychological examination to determine whether a substantial probability existed that Defendant could attain the capacity to permit the proceedings to go forward.  (ECF No. 68.)  In that Order, the Court expressly excluded the time from the Speedy Trial "until the Court determines whether Defendant is competent to stand trial."  (ECF No. 68 at 2.)  Then, on July 21, 2021, the Court found him competent to stand trial.  (ECF No. 102.)  Accordingly, the Court will exclude the time between October 23, 2020 and July 21, 2021 from the Speedy Trial Act calculation as time that Defendant was mentally incompetent to stand trial.

21

### iv. *Speedy Trial Time Calculation.*

As the above exclusion analysis illustrates, the Court must exclude the vast majority of the time that has elapsed during the pendency of this action. Taking into account the above exclusions, the Court will calculate the time that counts towards the Speedy Trial calculation below.

Defendant's Speedy Trial clock first began to run on September 28, 2019, the day after his initial appearance. *See United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996) ("In determining this 70-day period, the day of the event that triggers the [Speedy Trial Act] clock, *i.e.*, the filing or opening of the indictment or the initial appearance, is not included in the calculation; the clock begins to run the following day."). The clock ran, excluding the day of Defendant's arraignment[2], until the first excludable time period began on October 23, 2019. Before that, twenty-four days of includable time had elapsed against the Speedy Trial Act clock.

Because of a continuance, the clock did not begin to run again until January 23, 2020. It then stopped running again on January 29, 2020, upon the filing of Defendant's Motion to Continue (ECF No. 50). Thus, six days of includable time had elapsed against the Speedy Trial Act clock during this period.

Due to COVID-19 exclusions, competency exclusions, exclusions related to Defendant's change of counsel and exclusions related to Defendant's motions, the Speedy Trial Act clock did not begin to run again until October 26, 2021. When trial starts on November 2, 2021, another seven days will have elapsed. Therefore, only 37 will have elapsed against the Speedy Trial Act by the time that Defendant's trial commences. Consequently, Defendant's rights under the Speedy Trial Act have not been violated.

---

[2]     The Court will exclude October 2, 2019, the day of Defendant's arraignment. *See Stoudenmire*, 74 F.3d at 63 (holding that the Speedy Trial Act excludes the day of a defendant's arraignment under 18 U.S.C. § 3161(h)(1) if it follows the indictment).

### III.    CONCLUSION

For the reasons stated above and from the bench on October 25, 2021, Defendant's

Motions to Dismiss (ECF Nos. 143, 156) are hereby DENIED.

An appropriate Order shall issue.

 Let the Clerk file a copy of this Order electronically, notify all counsel of record and

send a copy to Defendant at his address of record.

It is so ORDERED.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated:  November 1, 2021